PHILIP LEVINE, Appellant, v. ETHLYN HUMPHREYS.

Division One, March 5, 1923.

1. **CONTRACT: Option or Sale: Time of Essence.**  If the contract is a mere option permitting the buyer to purchase the property at any time within thirty days, time is of its essence, and it must be performed by the buyer within the time, or it is not enforcible by him.  If it is contract of sale, in which the interest in the property itself passes for a valuable consideration, time is not of its essence, and it is not right or reasonable that the purchaser's title or interest should be divested by a technical default.

2. ———: **Sale: Forfeiture of Earnest Money.**  An instrument reciting the receipt of one hundred dollars as "earnest money and part purchase money" and that the real estate "is this day sold" to the buyer "for $12,625," of which amount $5625 is "payable in cash" and the "balance of $7,000 is to be secured by a first deed of trust on said premises," obligated the purchaser, who signed it, to pay those amounts of money, and was a contract of sale, and was not cut down to a mere option by a subsequent recital that "this sale under this contract is to be closed on or before thirty days, and if not closed by that time, owing to the failure or neglect of the purchaser to comply with the terms herein, the abovementioned earnest money is to be forfeited," for it was made plain that the purpose of said clause was to hurry the purchaser and that he was not absolved from said obligation to pay the whole price, by a still further recital that "such forfeiture shall not release said purchaser from any liability for the fulfillment of this contract of sale, or the payments of money herein mentioned, if said seller shall elect to enforce fulfillment of the same."  Nor does the word "elect" in this last clause add anything to or take any-

thing from the right to enforce the contract against the purchaser.

3. ———: ———: ———: **To Be Performed Within Designated Time.** An instrument which on its face purports to be a contract of purchase, and by whose express terms the liability of the purchaser to pay the entire purchase price survives his failure to pay it on or before a designated date, is not a mere unilateral option, but a contract of sale.

4. ———: ———: ———: ———: **Specific Performance.** The purchaser under a contract of sale of real estate, obligating him to pay the entire purchase price and imposing a forfeiture of the earnest money paid unless the deal is closed within a designated date, and providing for an examination of the title and an adjustment of rents, interest, water license, taxes and insurance, is entitled to have it specifically performed upon a compliance with its terms within a reasonable time, and the seller is not entitled to declare a forfeiture for his failure to complete the transaction within the designated date.

Appeal from St. Louis City Circuit Court.—*Hon. Granville Hogan,* Judge.

REVERSED AND REMANDED (*with directions*).

*Taylor R. Young* and *P. H. Cullen* for appellant.

(1) Equity holds time to be, prima-facie, non-essential, and will enforce the specific performance of agreements to convey land after the time for their performance has been suffered to pass by the party asking for the intervention of the court. 4 Page on Contracts, secs. 2105, 2106; Durant v. Comegys, 3 Idaho, 204; Brumfield v. Palmer, 7 Blackf. 227; Ewing v. Crouse, 6 Ind. 312; Keller v. Fisher, 7 Ind. 718; Jones v. Robbins, 29 Me. 351; Austin v. Wacks, 30 Minn. 335; Walton v. Wilson, 30 Miss. 576; Fletcher v. Wilson, Smedes & M., Ch. 376; Huffman v. Hummer, 17 N. J. Eq. 263; Grigg v. Landis, 19 N. J. Eq. 350; Pickering v. Pickering, 38 N. H. 400; White v. Butcher, 6 Jones Eq. 233; Frink v. Thomas, 20 Or. 265, 12 L. R. A. 239; D'Arras v. Keyser, 26 Pa. St. 249; Johnson v. McMullin, 3 Wyo. 237. (2) Time is not essential to such contract when

the situation of the parties is unchanged, and the delay is reasonably excused, and the party in default manifests good faith, and is reasonably prompt and vigilant. Austin v. Wacks, 30 Minn. 335; Garretson v. Vanloon, 3 G. Greene, 128, 54 Am. Dec. 492. (3) Though time may be made of the essence of a contract for the sale of land by express agreement or reasonable construction, yet in the absence of express stipulation, courts ordinarily lean against such construction, for the reason that it would result in the enforcement of a penalty, and because interest is ordinarily treated as full compensation for the delay. Ellis v. Bryant, 120 Ga. 890; Frink v. Thomas, 20 Or. 265, 12 L. R. A. 239. (4) A condition in the contract that if the vendee complies promptly the vendor will execute a deed, does not make time of the essence of the contract, and a failure by the vendee to pay the purchase money when it falls due will not authorize the vendor to rescind without an offer to perform on his part. Jones v. Loggins, 37 Miss. 546; Coles v. Shepard, 30 Minn. 446.

*Barney L. Schwartz* and *Arthur E. Haid* for respondent.

(1) The contract sued on was a unilateral contract. or a mere option, and time was of the essence thereof. Hollmann v. Conlon, 143 Mo. 369; Dunaway v. Day, 163 Mo. 415; McQuary v. Missouri Land Co., 230 Mo. 342; Johnson v. Portwood, 89 Tex. 235; Wilbanks v. Selby, 227 S. W. (Tex.) 371. (2) A contract can legally be performed on a legal holiday, unless expressly prohibited by statute. Stewart v. Brown, 112 Mo. 171; Simmons v. Affolter, 254 Mo. 163; State v. Gould, 261 Mo. 694; Cartwright v. Liberty Telephone Co., 205 Mo. 126. (3) A tender of money in satisfaction of an obligation payable in money, to be unobjectionable, must be made in whatever form money is, at the time, legal tender for the payment of debts. 38 Cyc. 143; Thompson v. Royal Neighbors, 133 S. W. 150; Breed v. Hurd, 6 Pick. (Mass.) 356. (4)

Tender must be kept good. 38 Cyc. 142, 158, 160; Voss v. McGuire, 26 Mo. App. 456. (5) A party is not entitled to the aid of a court of equity when that aid becomes necessary by his own fault. Hollmann v. Conlon, 143 Mo. 384; McQuary v. Missouri Land Co., 240 Mo. 361; Secret Service Co. v. Mfg. Co., 125 Mo. 156; Holgate v. Eaton, 116 U. S. 40; Cantwell v. Johnson, 236 Mo. 600.

*Taylor R. Young* and *Abbott, Fauntleroy, Cullen & Edwards* for appellant in reply.

(1) In an option contract, because of its one-sided nature, time of election is of the essence in equity as well as at law, whether expressly so stipulated or not, and that, therefore, the failure of the optionee to exercise his right of election and to give notice within the time stipulated in the option, or implied by law, ends his option rights. Dunaway v. Day, 163 Mo. 415. Our insistence is that the contract involved in this case is not an option, but is a contract of sale, and because it is a contract of sale the rule as to time being of the essence of it does not apply. That the contract in suit is a sale contract and not an option is conclusively established by Heman v. Wade, 140 Mo. 340. See also Rampton v. Dobson, 3 A. L. R. 569, where practically all the cases pointing out the difference between options and sale contracts are collected in an extensive case note entitled "Instances in which instrument has been held to be a contract of sale." (2) Since the law does not require anyone to do vain or useless things, a formal tender is never required where it appears that if it had been made, the money would not have been received, as where a creditor states that an actual tender will be useless because he will not accept it, or where one party to a contract states that he will not comply with its terms. Girard v. Car Wheel Co., 123 Mo. 358, 45 A. S. R. 556, 25 L. R. A. 514. Where a tender by check is made and refused on grounds other than that it does not constitute an offer of lawful money, the person so refusing will be held to have waived the objection to the medium of tender. (3) Even if

tender was not made in proper form, plaintiff was not in default because defendant never tendered deed. Mc-Grath v. Gegner, 77 Md. 331, 39 A. S. R. 415; Gunby v. Ingram, 57 Wash. 97, 36 L. R. A. (N. S.) 232; Comstock v. Lager, 78 Mo. App. 390; Pearson v. Millard, 150 N. C. 303; Boyden v. Hill, 198 Mass. 477; Burner v. Burner, 155 Va. 484; Favorite Carriage Co. v. Walsh, 71 Minn. 292; House v. Burr, 24 Barb. (N. Y.) 525.

BROWN, C.—This is an action in the nature of a suit in equity to enforce the specific performance of a contract for sale by the defendant to plaintiff of certain real estate in the city of St. Louis, known and described as number 455 Laurel Avenue. This contract, which is described in and filed with the petition, is as follows:
"St. Louis, Mo., January 24, 1920.

"Received of Mr. Philip Levine the sum of one hundred dollars as earnest money and part purchase money for a certain parcel of improved property, lying in the city of St. Louis, State of Missouri, in city block No......, and having a front of thirty feet on the west side of Laurel Avenue by a depth of 120 feet, being the three-family apartment situated and known as 455 Laurel Avenue, which property is this day sold to Mr. Philip Levine for the total sum of twelve thousand, six hundred and twenty-five dollars, payable as follows: Five thousand, six hundred and twenty-five dollars cash, and balance of seven thousand ($7,000.00) dollars which is secured by a first deed of trust now on the property, to be assumed by the purchaser, with interest at the rate of six per cent, payable semiannually; said deferred payments to be secured by first deed of trust on said premises. The title to said property to be perfect, and to be conveyed by warranty deed, free from liens and encumbrances, except the taxes for the year 1920, and thereafter, and which the undersigned purchaser assumes and agrees to pay; also subject to restrictions recorded, rents, interest, water license, taxes and insurance to be adjusted to date of transfer of property.

"If upon examination the title be found imperfect, and cannot be perfected within a reasonable time, said purchaser is to be paid a reasonable cost of examining the title, and the earnest money is to be refunded.

"This sale under this contract to be closed on or before thirty days, at the office of Julius Haller Realty Company, and if not closed by that time, owing to the failure or neglect of the purchaser to comply with the terms herein, the above-mentioned earnest money is to be forfeited to Julius Haller Realty Company, but such forfeiture shall not release said purchaser herein from any liability for the fulfillment of this contract of sale, or the payments of money herein mentioned, if said seller shall elect to enforce fulfillment of the same.

"This sale under above terms and conditions is made subject to the approval of the owner of the property.

"JULIUS HALLER REALTY Co. (Seal), Agent.

"Per ARNO W. FOWLER,

"Accepted on above terms and conditions.

"ETHELYN W. HUMPHREYS (Seal), Owner.

"Accepted on above terms and conditions.

"PHILIP LEVINE (Seal), Purchaser.

"I hereby approve the above contract dated January 24, 1920, and agree to pay two hundred dollars commission thereon.

"ETHELYN HUMPHREYS."

The petition was filed in the trial court February 27, 1920. Its sufficiency is not questioned. It charges full performance on the part of plaintiff, including the tender to defendant of the sum of $5,625, which it alleges to be the full amount required by its terms to be paid her as a condition precedent to the execution of the deed required by its terms, and that she had failed and refused to perform the conditions on her part by the execution of such deed, and asks judgment against her accordingly. It also states that the plaintiff brings the money into court to abide its judgment. As no question is raised as to the sufficiency of the petition we have simply stated its legal effect in its application to the is-

sues joined in this appeal. The answer, omitting formal parts, is as follows:

"Defendant, for her answer to plaintiff's bill filed herein, denies that she executed contract in words and figures as set out in 'Plaintiff's Exhibit A,' but states and alleges the fact to be that on the 24th day of January, 1920, she entered into a written contract with said plaintiff by the terms of which, defendant, in consideration of the price therein mentioned, promised and agreed to convey to plaintiff premises known as 455 Laurel Avenue, St. Louis, Missouri, being property having the front of thirty feet by a depth of one hundred and twenty feet on said Laurel Avenue, which said contract was to be closed on or before thirty days from said 24th day of January, 1920, at the office of Julius Haller Realty Company, time being of the essence of said contract, and it was further provided in said contract that if said contract was not closed at that time owing to the failure or neglect of said defendant, the said defendant was to forfeit the sum of one hundred dollars earnest money heretofore deposited by plaintiff with the Julius Haller Realty Company.

"Defendant further states and alleges the fact to be that during all the times from said 24th day of January, 1920, and for thirty days thereafter, she was ready, able and willing to perform said contract and on divers occasions tendered performance thereof at the place fixed for performance, but that plaintiff failed and neglected to carry out the terms of said contract and was in default thereof and still is and failed to pay the purchase price at said time or to make a tender thereof, and defendant states and alleges the fact to be that plaintiff did not tender performance of said contract or tender to defendant the balance of the purchase price therefor, at any time and ever since has been and is now in default and was not and is not now ready, willing and able to perform said contract according to the terms thereof.

"Defendant further states and alleges the fact to be that since the execution of said contract by defendant, plaintiff by its agent and without the knowledge and con-

297 Mo.—36

sent of defendant, altered said contract in this material respect, to-wit: That plaintiff erased the words and figures 'seventy-five hundred dollars ($7500)' and substituted therefor the sum of seven thousand dollars ($7,000), which said erasure and substitution was made subsequent to the execution of said contract by defendant and unknown to her.

"Wherefore, the premises considered, defendant prays this Honorable Court to dismiss plaintiff's bill filed herein, and for such other and further orders and judgments touching the premises as to the court shall seem meet and proper."

The wrongful alteration charged is not sustained by evidence, nor insisted upon in this court, and will not therefore receive further notice. The new matter pleaded in the answer is denied by replication.

The defendant testified at the trial that, at the time of these transactions, she was employed by the Federal Board of Vocational Education, at its office in the Chemical Building at Eighth and Olive Streets. That on Saturday, February 21st, in answer to a telephone call from Mr. Fowler, she went to the office of the Julius Haller Realty Company to close this deal. She first went to the real estate office of Mr. Rhodes, her rent collector, to get some papers, and he went with her from there to the office of the Haller Realty Company, and she said to Mr. Fowler of that company that she had come to close the deal, and asked him if he had the certificate of title. He answered that he got it on the sixteenth. She asked him if he had the deeds ready for her to sign and he said he had not. She said that he had called her down to close the deal and asked, "Where is your client? Isn't he going to be in today? You called me down here to close the deal and I have come, and he says, 'Why no.' he said, "He won't be here.' I said, 'Well, I will come in Monday.' So I came again Monday to Mr. Haller's office,'" and she told Mr. Fowler that she had come to close the deal and asked him if his client was there. He replied no that "he won't be here." She said "I thought

you were going to close up this deal." Mr. Fowler "seemed very evasive." She asked for Mr. Levine and Mr. Fowler said that he was in Chicago. She went back to Mr. Rhodes's office, and after a while Mr. Fowler came in with Mr. Rhodes. She said to Mr. Fowler, "This is the last day to close the deal, and we want the money if you mean business." She said the contract was to be closed in thirty days and the time was up and she wanted the cash if she was going to close the deal. That Fowler said he had not got the cash, and she told him that was a funny way to do business; that it seemed to her he was fooling around and did not want the house. Fowler then said he would go out and get the cash. She told him she would wait for him and he came back and said he could not get the cash, and it being late in the afternoon she went home. The next day Fowler called her up at the office where she worked and asked her to come to his office, but they were busy and she could not get off, so Mr. Fowler asked her if she would be home that evening, and she told him she was always home to her supper. He said nothing then about closing the deal. He came to her house that evening with the plaintiff and two strangers. The plaintiff told her he had a certified check for the money to pay on the contract, showing a folded paper but not opening it. She told him that the contract said the deal was to be in cash. The plaintiff seemed disconcerted and one of the men who was with him said "Why, a certified check is just as good as cash." Afterward she said to them she wanted the cash, and "besides, it is too late; the transaction was closed yesterday."

Witnesses for the plaintiff, including the plaintiff himself and the witness Bierman, who was present on the evening of February 24th, testified that in refusing the offer of the cashier's check the defendant placed such refusal upon the ground that the time for exercising the right to purchase her property had passed, and did not place her action upon the ground that the funds in which the tender was made, that is to say, the cashier's check, was not legal tender.

In that year Washington's Birthday, a statutory holiday, came on Sunday the 22nd of February, the twenty-ninth day after January 24th, the date of the contract on which the suit is founded.

I. The important question presented by this appeal is whether the instrument in suit is a contract of sale, equally binding upon both the plaintiff and defendant, or a mere option on the part of the defendant permitting the plaintiff to purchase the property described at any time within thirty days of its date. If the latter, each party seems to concede in argument that time is of the essence of the contract, which binds only the seller, and leaves the potential purchaser free to purchase or not as he pleases, during the time allowed him in the instrument, and not otherwise, so that the time is the measurement of the thing sold. The converse is true of contracts of sale, in which the interest in the thing itself passes for a valuable consideration, and it is no longer right or reasonable that the title or interest of the purchaser should be devested by a technical default.

Sale or Option.

The analysis of this contract must determine to which of the classes we have mentioned it belongs. It starts in the form of a receipt of $100 as earnest money and *part purchase money* for the land in question, and continues with the statement that the same property "is this day sold to Mr. Philip Levine for the total sum of twelve thousand, six hundred and twenty-five dollars." No sale could be described in language more definite than this. It then proceeds to fix the date and manner of payment of the purchase price: $5,625 are to be paid in cash and the balance of $7,000 to be secured by deed of trust on the same property. It then provides that the title should be perfect and should be conveyed by warranty deed free from encumbrances, except for taxes for the year 1920 and thereafter, which the purchaser assumes and agrees to pay. So far the transaction is embodied in a written contract of sale with no drawback or qualification. The purchaser, by signing it, obligates

himself to pay the price. It then provides that the purchaser shall have a reasonable time to examine the title and that if it shall be found imperfect, and cannot be perfected within a *reasonable time,* the cost of examining the title and the earnest money are to be refunded. This last is the only qualification or restriction upon the absolute character of the sale, and is a restriction upon every sale in which the vendor undertakes to convey a perfect title, but this sale is loaded with a condition still more onerous. It provides that "'this sale under this contract to be closed on or before thirty days, at the office of Julius Haller Realty Company, and if not closed by that time, owing to the failure or neglect of the purchaser to comply with the terms herein, the above-mentioned earnest money is to be forfeited.'' This is evidently an effective provision by which the purchaser may be hurried. If he closes the transaction within thirty days his bonus is to be applied on the purchase, if not, it is to be forfeited to the vendor. If this puts an end to the transaction so far as his liability to pay the entire purchase money goes, a skillful reasoner might argue that his failure would absolve him from paying the price, but the defendant left no such hole in the blanket, and added the following provision: ''But such forfeiture shall not release said purchaser herein from any liability for the fulfillment of this contract of sale, or the payments of money herein mentioned, if said seller shall elect to enforce fulfillment of the same.'' By this last provision the instrument becomes a model of simple and direct statement of a contract of sale, final and conclusive in all its terms, leaving no room whatever for any construction inconsistent with the purpose so clearly stated at the very beginning. The theory of defendant that it is a mere unilateral option by which he may assume the obligations and become vested with the rights of a purchaser only by making final payment on or before the days specified, is still more clearly negatived by the last clause. By its terms he still remains liable for the entire purchase price, whenever the seller may choose to sue for its recovery, and it cannot be

maintained that she could have both the money and the land. This provision is emphasized by the penalty of $100 imposed for the failure of the purchaser to close the transaction *on the day fixed by the instrument.* The failure of the parties to add to this imposition the provision that the contract should cease and be determined by such failure would be clearly inconsistent with the right of the vendor to recover the purchase money reserved by her in that clause. She not only expressly reserves that right, but all other rights under the contract which constitutes a sale. The fact that she uses in the clause saving these rights the word ''election'' adds nothing, nor does it take anything from the right to enforce the contract against the purchaser, for the right to sue for one's own is not compulsory, but may always be waived.

The same question was before this court in Heman v. Wade, 140 Mo. 340. In that case a contract in the form of an option to purchase the land by the payment of the first installment of the purchase price on or before a day therein mentioned contained also the following stipulation: ''If said Clark fails to pay the sum hereby required to be paid on or before the 3rd day of February, 1894, the $500 hereby receipted for shall be forfeited to Adam Boeck & Co., but the obligation to purchase at the price of $12,500 shall continue and be binding upon said Clark.'' This court held that this provision removed the contract from the category of options, and transmuted it into a bilateral contract of sale and purchase, so that the purchaser under the contract, having received from the vendor a deed executed long after the forfeiture, was permitted to recover in ejectment against the tenant in possession under a lease executed after the forfeiture and long before the execution of the deed. The court disposed of the question as follows, at page 346: ''It is contended for the defendants that the contract of the brick company with Clark was a mere option to purchase on or before the third day of February, 1894, which was forfeited by Clark by his failure to pay the first installment

of the purchase money on or before that day. This contention is answered by the contract itself, by the express terms of which the obligation to purchase was to remain, notwithstanding such failure.'' In the many cases cited by the respondent we have failed to find one which holds that an instrument like this, which purports upon its face to be a contract of purchase, and by the express terms of which the liability to pay the entire purchase price survives the failure to pay it on or before the day mentioned therefor, has been held to be a mere option. Had our attention been directed to such an adjudication we would probably have considered it an inadvertence. In a copious note to Rampton v. Dobson, 3 A. L. R. 569, decided in 1912, many cases are collocated with reference to the judicial classification of the instruments involved, as contracts of sale on the one hand, or mere options to purchase on the other. This collection has been interesting and instructive to us, and we do not hesitate to recommend it to those having either the curiosity or the occasion to give special investigation to this general subject. It has confirmed us in the opinion that the survival of the liability of the purchaser, or potential purchaser, to pay the purchase price, affords a reliable test of the character of the transaction in such cases as the one at bar.

II.  Having arrived at the conclusion stated in the preceding paragraph, it is unnecessary that we should go further in our investigation of this case than to say that there seems to be no conflict between the parties as to the right of the plaintiff to maintain this suit provided the contract of sale is absolute in its nature, Specific Performance. and entitles the purchaser to a conveyance upon the performance of its conditions, and the contract to purchase binds the purchaser to the payment of the agreed price. In such cases the purchaser by his contract acquires an equitable interest in the land, which clothes him with the right to the legal title upon the performance of all the conditions of his purchase. [26

R. C. L. 72.] This is simply the statement of the general rule, subject to be modified by any special circumstances which would make its enforcement inequitable. As we have already said no such circumstance is suggested in this case, and it is not even denied in argument that the remedy flows as a matter of course from the right.

It is well to suggest in this connection that the determination of the terms upon which the transaction is to be closed and the title to the premises transferred, involves an adjustment of rents, interest, water license, taxes and insurance, all of which, if the parties should not be in accord, will devolve upon the trial court.

For the reasons we have stated, the judgment of the circuit court for the city of St. Louis is reversed, and the cause remanded to that court for further proceedings in accordance with the views of this court herein expressed. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is hereby adopted as the opinion of the court. All of the judges concur.