## WORLEY *v.* McCARTY.

1. **VENDOR AND PURCHASER—TITLE INSURANCE—TIME.**
   Preliminary sales agreement providing that the vendors should
   furnish purchaser as soon as possible an abstract of title or
   a title insurance policy contemplated that a reasonable time
   would be allowed the vendors in which to obtain title insurance.

2. **SAME—RESCISSION—TITLE INSURANCE.**
   Vendors of hotel property who procured title insurance policy
   within approximately a month of time purchasers found fault
   with the title as disclosed by the abstract and requested title
   insurance policy *held,* to have been ready to furnish such policy
   within reasonable time contemplated by preliminary sales
   agreement, hence, purchasers were not entitled to rescind such
   agreement and recover deposit money.

3. **SAME—FORFEITURE OF DEPOSIT—STIPULATED DAMAGES.**
   Provision of preliminary sales agreement relative to disposition
   of deposit in event the purchaser failed to complete the deal

---

REFERENCES FOR POINTS IN HEADNOTES
[1]  55 Am Jur, Vendor and Purchaser § 165.
[2]  55 Am Jur, Vendor and Purchaser § 585 *et seq.*
[3, 5]  55 Am Jur, Vendor and Purchaser § 525; 15 Am Jur, Dam-
   ages § 248.
   Measure of damages for purchaser's breach of contract to buy real
   property.  52 ALR 1511.
[6, 7]  15 Am Jur, Damages § 240 *et seq.*

is construed to be stipulated damages notwithstanding declaration that deposit is "forfeited," where from the whole contract, the subject matter and the situation of the parties, such appears to have been their intention so to stipulate and there is present some difficulty in ascertaining the actual damage.

4. DAMAGES—BREACH OF CONTRACT—FORFEITURE.

The proportional strength of the presumption that parties to a contract intended to provide for liquidated damages for breach of contract rather than forfeiture of deposit made is based upon the measure of difficulty in ascertaining the actual damage by proof.

5. VENDOR AND PURCHASER—FORFEITURE OF DEPOSIT—UNJUST ENRICHMENT.

Forfeiture of deposit of $4,000 on hotel property for purchasers' failure to complete contract when vendors complied therewith by procuring title insurance policy *held*, stipulated damages and not to have resulted in unjust enrichment of the vendors who sold the property for $2,000 less and were obligated to pay balance of deposit to brokers.

6. CONTRACTS—STIPULATION AS TO DAMAGES FOR BREACH.

The parties to a contract can stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement, such stipulation being enforceable if the damages from a breach are uncertain and difficult to ascertain at the time the contract is executed and the amount stipulated is reasonable with relation to the possible injury suffered.

7. SAME—LIQUIDATED DAMAGES.

A provision for liquidated damages for breach of contract will be regarded as enforceable, and not as a penalty, where it embraces the principle of just compensation for the loss or injury actually sustained.

Appeal from Hillsdale; Arch (Charles O.), J. Submitted October 9, 1958. (Docket No. 25, Calendar No. 47,653.) Decided December 3, 1958.

Bill by Alvin D. Worley and Loretta Worley against Richard E. McCarty, Patricia M. McCarty, J. D. Klires Realty, Inc., a Michigan corporation, J. D. Klires and Nina Hubbard for accounting and repayment of deposit on offer to purchase real estate. Bill dismissed. Plaintiff appeals. Affirmed.

*Arthur G. Lyon,* for plaintiffs.

*Prettie & McIntyre* (*Kenneth G. Prettie,* of counsel), for defendants.

VOELKER, J. Plaintiff-appellants in this case seek the return of a $4,000 deposit which they gave the 2 defendant real-estate brokers on September 17, 1955, in connection with a preliminary sales agreement to purchase a certain hotel property in the village of Jonesville, Hillsdale county, Michigan, and described therein simply as the "Jonesville Inn," no legal description being given. The agreement provided that:

"As evidence of title, seller agrees to furnish purchaser as soon as possible, a complete abstract of title and tax history. * * * In lieu thereof, a policy of title insurance * * * guaranteeing the title in the condition required for performance of this order, will be accepted."

The agreement further provided:

"If a marketable title can be conveyed, the sale shall be consummated within 5 days after delivery of such abstract or policy. If an abstract is furnished and an objection is made to title, and notwithstanding, a Burton Abstract and Title Company policy of title insurance, insuring the title in the condition required by this offer, can be obtained, the sale shall be consummated within 5 days after delivery of such policy."

It was further provided that the 2 real-estate brokers negotiating the deal were to share a commission of $4,000 and that "If the deposit money is forfeited for nonperformance by purchaser, the seller agrees that 1/2 of such deposit shall be paid to the broker * * * for services rendered."

It was further agreed that the purchasers would timely complete the purchase "or forfeit to the seller the deposit made as liquidated damages."

The abstract was furnished and plaintiffs subsequently attempted to rescind the agreement by claiming that the title was not marketable because a portion of the building (2 rooms on the second floor) extended over and was physically a part of the store property of a third person, and that title insurance was not available. Upon the defendants' failure to consent to the attempted rescission and return the deposit, the plaintiffs commenced this action by filing a bill of complaint on April 9, 1956, praying for an injunction to restrain any attempted forfeiture of the deposit money by the defendants, for an accounting, and for judgment against the defendants for said money. After an extensive hearing the trial court decreed that the plaintiffs' bill of complaint should be dismissed, and that its own temporary injunction of the above-mentioned forfeiture which had been issued pursuant to the prayer of the bill should be dissolved. From that decree the plaintiffs appeal. Further facts will be disclosed as this opinion proceeds.

The case involves 2 main issues: 1. Were the plaintiffs warranted in rescinding the agreement to purchase? 2. Was the provision for forfeiture a penalty and were the seller-defendants unjustly enriched thereby?

As noted, the plaintiffs agreed to complete the purchase upon delivery of an abstract showing a marketable title or in lieu thereof a policy of title insurance covering the property in question. An abstract of title was submitted to plaintiffs which they claimed showed the property was not marketable. Subsequently on November 17, 1955, they requested a policy of title insurance to cover the property. After considerable effort and negotiations on

December 19, 1955, the defendant-sellers notified plaintiffs that they had procured an unequivocal commitment of title insurance on the property from the company named in the agreement "that would fully insure the title" and requested completion of the purchase within 15 days.

We think that the agreement contemplated that a reasonable time would be allowed to the sellers in which to obtain title insurance, when requested by the buyers. It is our further opinion that in the circumstances the title insurance commitment was procured within such a reasonable time and, therefore, the plaintiff-appellants had no valid cause to rescind the contract to purchase. We further think that the interim actions of the plaintiffs—of which more presently—obviated the necessity for delivery to them by sellers of the actual policy, as provided in the agreement.

We note that during the time of their attempted rescission the plaintiffs were already negotiating for the purchase of another hotel, which they subsequently purchased. We further note that after requesting title insurance the plaintiffs made a down payment on this other property without notifying defendants or waiting for the defendant-sellers to complete their good-faith negotiations for the requested policy on the Jonesville Inn. We also note that the plaintiff Alvin Worley had earlier visited the Jonesville Inn on 2 occasions and examined it carefully. We further note that the long and rather detailed mortgage and other history of this venerable hotel property discloses no prior question raised as to marketability. In any case the defendant-sellers appear to have stood ready to furnish all that the purchase agreement called for, and possibly more.

In his findings and opinion the learned chancellor aptly summed up the situation as follows:

"The court cannot escape the feeling but what plaintiffs are sick of their bargain for one reason or other and are attempting to void it by excuses which have no creditable basis either in fact or in law. In the first place, the agreement provided that either an abstract of title, duly certified to date, and showing merchantable or marketable title would be acceptable on that score; or, in lieu thereof, title insurance * * * would likewise be acceptable. It now appears, after a full review of the evidence, that both were available. Then plaintiffs come up with the idea that 2 rooms are set out to the east of a store below, and that there was a question as to whether or not they were included in the conveyance, and whether or not there was any assurance that they would get title to them along with the inn and the furnishings therein. Upon being assured that such was the case, they still declined to accept and it can only be reasonably inferred that they were no longer interested in going through with the transaction and were hoping, by decree of this court, to get all or a part of their deposit refunded. The court is not inclined to that proposition and finds it entirely without merit for the reasons herein given."

Having decided that the commitment of title insurance satisfied the condition of the purchase agreement we do not think it is necessary for us to engage in any further discussion of the subject of marketability. We turn now to the question of forfeiture.

We think it well to preface our discussion of the question of forfeiture of the $4,000 deposit by quoting the remarks of Justice CHRISTIANCY in the leading case of *Jaquith* v. *Hudson,* 5 Mich 123 at 138:

"Thus, though the word 'penalty' be used * * * or 'forfeit' * * * or 'forfeit and pay' * * * it will still be held to be stipulated damages, if, from the whole contract, the subject matter, and situation of the parties, it can be gathered that such was their

intention. And in proportion as the difficulty of ascertaining the actual damage by proof is greater or less, where this difficulty grows out of the nature of such damages, in the like proportion is the presumption more or less strong that the parties intended to fix the amount."

In this case the parties stood in a relatively equal bargaining position when they entered into the contract. Thus when they determined and provided that the $4,000 deposit should be forfeited as liquidated damages in the event that the contract of sale was not completed we think it must be assumed that they considered that to be a fair amount. With this in mind, coupled with the actual situation appearing in the record (ultimate sale of the hotel property at $2,000 less, the provision for the 2 brokers who had already done their work, and the necessary legal expenses incurred in this litigation), we agree with the trial court that the deposit was not a penalty and that the forfeiture thereof rather manifestly did not result in any unjust enrichment to the defendants as alleged in the bill of complaint.

Headnotes 5 and 6 of Mr Justice KAVANAGH's opinion in *Curran* v. *Williams,* 352 Mich 278, state the matter succinctly:

"The parties to a contract can stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement, such stipulation being enforceable if the damages from a breach are uncertain and difficult to ascertain at the time the contract is executed and the amount stipulated is reasonable with relation to the possible injury suffered."

And

"A provision for liquidated damages for breach of contract will be regarded as enforceable, and not as a penalty, where it embraces the principle of

just compensation for the loss or injury actually sustained."

The decree of the trial court is affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.