STATE of Missouri ex rel. STATE
HIGHWAY COMMISSION of
Missouri, Respondent,

v.

Clarence I. HERMAN et al., Exceptions
of Donald F. Willsey, et al., Appellants.

No. KCD 27559.

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1976.

Motion for Rehearing and/or Transfer
Denied Jan. 31, 1977.

Application to Transfer Denied
March 14, 1977.

John S. Newhouse, J. Samuel Newhouse, Independence, for appellants.

Bruce A. Ring, Chief Counsel, Missouri State Highway Commission, Earl H. Schrader, Jr., James R. Sandifar, John R. Meharry, II, Asst. Counsel, Kansas City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

TURNAGE, Presiding Judge.

The State Highway Commission brought suit to acquire 19 acres owned by Donald F. Willsey for right-of-way for I–470. The commissioners awarded Willsey $18,500 and on the trial of his exceptions, a jury awarded Willsey $20,000. This appeal by Willsey follows.

On appeal Willsey claims error in the following respects: (1) Admission of a contract and deed relating to Willsey acquiring a right-of-way to serve 75 acres of his remaining land; (2) Refusal to admit in evidence another contract relating to such right-of-way; (3) Refusal to grant a continuance; (4) Testimony of the State's expert witness; (5) Admission of testimony as to use of the remaining land at time of trial; and (6) Comments made by the trial court during the trial. Affirmed.

The following drawing will serve as a guide to identify the right-of-way taken and the remaining land belonging to Willsey together with the tract acquired by Willsey for access to his remaining land.

Tracts 1 and 2 were owned by Willsey prior to the taking. These tracts were separated as shown by the right-of-way for I-470.

The date of taking in this case was January 16, 1965. Tract 2 was acquired by Willsey in January, 1963, and contained about 15 acres. On November 1, 1962, Willsey made a written offer to purchase the 15 acres in Tract 2. This offer contained a statement that Willsey had the right to acquire access at the selling price of $600 per acre. Willsey entered into a formal real estate contract on November 13, 1962, for the purchase of Tract 2. The following provision was contained in such contract:

> The sellers further agree that if the proposed new highway leaves the buyers without access from the aforesaid 15 acres to their present 97 acres located to the north, the sellers agree to sell the buyers enough additional footage at $600 an acre to assure a road right-of-way which must be adjacent to proposed 15 acre purchase.

The 97 acres referred to in this agreement was Tract 1. After the taking Willsey had about 75 acres remaining to the left of the right-of-way in Tract 1 as shown on the above drawing.

On May 4, 1966, Willsey received a warranty deed to Tract 3 for the purpose of providing access from Velie Road to the 75 acres in Tract 1. Tract 3 contains 10.23 acres.

At trial the principal difference between the parties revolved around the question of whether or not the remaining 75 acres in Tract 1 was landlocked. Willsey took the position it was landlocked because the deed by which he acquired Tract 3, which gave him access to the 75 acres, was not executed until May of 1966, or some sixteen months after the date of taking. Willsey produced two real estate experts who testified as to his damages and both estimated damages based on the 75 acres being landlocked, and, therefore, completely worthless. One of Willsey's experts stated Willsey's damage was $74,600 and the other stated the damage was $77,102.

The Commission took the position the access to the 75 acres of Tract 1 was contained in the offer to purchase Tract 2 and was carried into the contract to purchase such tract. The Commission contended it was thereby entitled to introduce the deed showing the acquisition of Tract 3 to prove the 75 acres in Tract 1 was not landlocked. Based on the Commission's theory its expert estimated Willsey's damage to be $14,275.

■ Willsey's first contention on this appeal relates to the claimed error on the part of the trial court in admitting the offer Willsey made to purchase Tract 2, which contained a provision for Willsey to obtain access. However, Willsey is in no position to complain on this appeal concerning the admission of this offer into evidence since it was admitted without objection on his part.

■ Willsey next complains of the admission in evidence of the deed to Tract 3 on the sole ground the date of this deed is after the date of taking. Willsey contends the valuation of his damage is to be made as of the date of taking and nothing which occurred after that date can be admissible. Here Willsey failed to object to the admission of the offer by which he proposed to purchase Tract 2. This offer showed it was accepted by the owner and contained the right in Willsey to acquire a right of access. Willsey introduced the formal contract by which he agreed to purchase Tract 2 and which set out the right Willsey possessed to acquire a right of access, which materialized in his acquisition of Tract 3. This right to acquire the access existed prior to the date of taking. As soon as the Commission condemned the right-of-way which denied direct access to the 75 acres in Tract 1, Willsey, by his contract, thereby became entitled to acquire a right of access to this 75 acres. Thus the right to acquire the access existed at the date of taking.

It is settled that the "relation of vendor and purchaser exists as soon as the contract for the sale and purchase of land is entered into. Equity regards the purchaser as the owner and the vendor as holding the legal title in trust for him: (citations omitted).

This equitable principle may be invoked in actions at law." *Savings Trust Co. of St. Louis v. Skain,* 345 Mo. 46, 131 S.W.2d 566, 570[1, 2] (banc 1939).

In this case, Willsey had the conditional right to acquire access to the 75 acres under the contract for the purchase of Tract 2. When the access was cut off to the 75 acres, the condition occurred which made the contract for acquisition of access operative. Willsey then became the purchaser, under this contract, of the right of access. Thus, on the date of taking, Willsey was regarded as the owner of the right of access with the vendor holding title in trust for him. While the contract did not specify the precise legal description of Tract 3, it was nevertheless proper for the jury to be informed the right to acquire the access existed as of the time of the taking and further to be informed of the fact Willsey did acquire this access through the deed to Tract 3. This certainly helped the jury to arrive at a proper verdict as to the amount of damages Willsey would sustain. To submit this case to the jury without informing it of this right of access would be to blindfold the jury to the very fact it needed to arrive at a fair verdict.

■ Willsey further complains of the refusal of the court to admit in evidence a separate contract which was entered into between Willsey and the vendor of Tract 3 for the purchase of Tract 3. This contract was originally offered when Willsey was on the stand, but at that time Willsey was unable to definitely identify it. Thereafter, Willsey attempted to introduce such contract in rebuttal, but the offer was refused. The trial court is vested with discretion to admit or exclude rebuttal evidence. *Schmitt v. Pierce,* 344 S.W.2d 120, 132[15] (Mo. banc 1961). There is no abuse of this discretion shown here because all of the information contained in this contract was contained in the contract admitted in evidence for the sale of Tract 2 and the deed to Tract 3.

■ Willsey complains also of the admission of the testimony of witness Boten who testified for the Commission. This complaint is based upon the fact Boten inspected the property first in 1963 and later in 1971, 1972, and 1973. Willsey claims Boten's memory was faulty and that his visits were too remote from the date of taking to permit him to have a sound basis for his appraisal. It first should be noted Willsey admitted the qualifications of Mr. Boten as a real estate expert. Beyond that the matter of which Willsey now complains would only go to the weight to be given the witness's testimony and not its admissibility. If his memory were faulty and if his visits were too remote, these were matters which the jury would be entitled to weigh but which do not disqualify the witness from testifying. *State ex rel. State Highway Commission v. Ogle,* 402 S.W.2d 605 (Mo. App.1966).

■ Willsey contends the court erred in admitting testimony as to the fact the remaining land was still vacant at the time of trial as it was on the date of taking. However, Willsey did not raise this contention in his motion for a new trial, and for that reason this matter has not been preserved for review. Rule 79.03; *Crystal Tire Company v. Home Service Oil Company,* 525 S.W.2d 317, 322[5] (Mo. banc 1975).

■ Willsey next complains of certain remarks made by the trial court in various rulings the court made and in response to some of the objections made by Willsey. This complaint likewise was not preserved for review by not being included in the motion for new trial. Further, no objection to the court's remarks were made during the trial. Such objection during the trial is necessary to preserve this matter for review. *Morrison v. Thomas,* 481 S.W.2d 605, 608[7] (Mo.App.1972).

Finally, Willsey complains of the failure of the court to grant him a continuance in the trial of this case. In this contention Willsey claims the Commission had agreed during the almost ten years from the date of taking until the date of trial the 75 acres would be landlocked, but suddenly changed its position the day before the case was scheduled to go to trial. Willsey contends

he was entitled to a continuance because of this change of position.

The transcript does not show Willsey filed a motion for a continuance. The only matters shown concerning a continuance are two stipulations in which the parties first stipulated in November, 1973, the case could be continued until after February 1, 1974, and again in May, 1974, stipulated the case could be continued until after September 15, 1974. On May 17, 1974, the court stated this case had been transferred to Division 16 because it was over three years old. The court stated it would consider the stipulation filed as a motion for continuance and overruled the same. The trial then began without any further motion for continuance and without any objection.

■ Thus there is nothing to show Willsey filed any motion for continuance based on surprise in a change of position on the part of the Commission. However, it should be observed that "[a]n agreement by the parties that a cause shall be continued does not operate as a postponement without the sanction of the court, and does not of itself bind the court." 17 C.J.S. Continuances § 11, p. 385. The granting of a continuance is largely within the discretion of the trial court and every intendment on appeal is in favor of the court's ruling. *Hammack v. White,* 464 S.W.2d 520, 523[6, 7] (Mo.App.1971).

■ Certainly there was no abuse of discretion shown on the part of the trial court in requiring this case to go to trial under the circumstances shown.

Judgment affirmed.

All concur.